| | | |
|---|---|---|
| **ERIC RAY WIX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:08-cv-1222** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | **Judge Thomas A. Wiseman, Jr.** |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**

Before the Court is Plaintiff Eric Ray Wix's Motion for Judgment on the Administrative Record (Doc. No. 13) and supporting memorandum (Doc. No. 14) seeking judicial review of the Commissioner's denial of Plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), as well as the Commissioner's Motion for Judgment on the Pleadings (Doc. No. 17). The Court withdraws the previous reference to the Magistrate Judge. For the reasons explained below, the Court finds that the ALJ's decision is supported by substantial evidence in the record and that the ALJ applied the correct legal principles in reaching his decision. Accordingly, Plaintiff's motion will be denied, the Commissioner's decision in the administrative action affirmed, and this matter dismissed.

**I.      INTRODUCTION**

Plaintiff was born January 25, 1971, and was thirty-two on the alleged onset date of September 29, 2002. (Doc. No. 9, Certified Transcript of Administrative Record ("TR"), at 16.) Plaintiff filed for SSI and DIB on November 28, 2005. (*Id.*) Plaintiff's claim was denied initially by the Commissioner on April 4, 2006, and again upon reconsideration on June 23, 2006. (*Id.*) At the age of thirty-six, Plaintiff was granted a hearing before administrative law judge ("ALJ") John Garner on June 14, 2007. Michelle McBroom, a vocational expert, also testified at the hearing. In a decision dated October 25, 2007, the ALJ denied Plaintiff's application for benefits. (TR 13-28.) Plaintiff thereafter filed a timely request for review by the Appeals Council, and on October 31, 2008, the Appeals Council denied Plaintiff's request for review. (TR 1.) The ALJ's decision thus became the final decision of the Commissioner, from which Plaintiff's appeal arises pursuant to 42 U.S.C. §§ 405(g) and 13183(c)(3).

## II.     THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Based on his review of the entire record, ALJ John Garner determined that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act, and made the following findings in a written opinion issued October 25, 2007:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2003.

2.    The claimant has not engaged in substantial gainful activity since March 19, 2003, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3.    The claimant's "severe" impairments have been a depressive disorder, a personality disorder, cannabis abuse, and a history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant has not had an impairment or combination of impairments that has met or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    Since his alleged disability onset date, the claimant could perform work at any level of exertion with allowances for avoiding the public, for having restricted contact with—but not isolation from—supervisors and co-workers, and for a mild limitation in concentration, persistence, and pace such that he performs work that is routine and repetitive, that has a low level of stress, and that has limited decision-making.  The claimant has not had any significant limits in his ability to understand, remember, and carry-out instructions

6.    The claimant may not have had any past relevant work (20 CFR 404.1565 and 416.964).

7.    As he was born on January 25, 1971, the claimant was 32 years old, which is defined as a younger individual age not younger than 18 or older than 49 (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and can communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of skills makes no difference in the outcome of this decision (20 CFR 404.1560(c) and 416.968).

10.   Considering his age, education, work experience, and residual functional capacity, . . . jobs that the claimant could perform have existed in significant numbers in the national economy (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.   The claimant has not been under a "disability," as defined in the Social Security Act, from March 19, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g).

(TR 17-26.)

III.    APPLICABLE LEGAL STANDARDS

    A.    Standard of Review

Under the Social Security Act (the "Act"), the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). This Court, therefore, is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). If substantial evidence supports the ALJ's conclusion and the ALJ applied the correct legal standards, this Court cannot reverse the ALJ's decision even if substantial evidence exists in the record that would have supported an opposite conclusion. *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995). Conversely, however, the Court must reverse and remand for further findings if the ALJ applied incorrect legal standards, even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545, 546 (6th Cir. 2004). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantiality is based on the record taken as a whole. *See Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984). When there has been a misapplication of the regulations or when there is not substantial evidence to support one of the ALJ's factual findings, the appropriate remedy is generally remand under sentence four of 42 U.S.C. § 405(g) for further consideration. *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

    B.    Evaluation of Entitlement to Social Security Benefits

Under the Act, a claimant is entitled to receive benefits only if he is deemed "disabled." 42 U.S.C. § 423(d)(1)(A). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability means a claimant, in light of his "age, education, and work experience," would be unable to "engage in any other kind of substantial work which exists in the economy." 42 U.S.C. § 423(d)(2)(A).

In applying the standards for determining disability, the Commissioner has promulgated regulations setting forth a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 406.920. An ALJ must proceed through the required sequential steps for evaluating entitlement to disability insurance benefits. *Id.* The Sixth Circuit has summarized the five-steps of the sequential evaluation process as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); 20 C.F.R. § 404.1520(b)-(f). The claimant has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at step five to show that alternative jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity ("RFC"). *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. ANALYSIS AND DISCUSSION

Plaintiff argues the ALJ erred because: (1) he did not properly decide Plaintiff was not disabled at step four; (2) his fourth hypothetical did not specify Wix's education level; (3) he failed to evaluate contrary evidence about Plaintiff's education; (4) none of his hypothetical questions to the vocational expert matched Plaintiff's residual functional capacity; (5) his fourth hypothetical lacked a restriction to unskilled work; (6) he did not fulfill his responsibility to inquire as to any discrepancies between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"); and (7) his finding of "low stress" is too vague for review. (Doc. No. 13, Pl.'s Mem. Supp. Mot. for Jgmt. on the Record (hereafter, "Pl.'s Brief"), at 5-15.) For the sake of clarity, Plaintiff's second and third arguments will be considered together, as will his fourth and fifth arguments; the remaining arguments will be considered individually.

**A. Whether the ALJ Erred by Not Making an Express Finding that Plaintiff Was "Not Disabled" at Step Four**

Plaintiff points out that the ALJ, at step four, stated that Plaintiff "may not have had any past relevant work," and argues that such a statement cannot "be interpreted as a formal finding that, indeed, Wix had past relevant work and that such work was a basis for the ALJ's finding of non-disability. (Pl.'s Brief at 5-6 (citing TR at 26).) The Federal Regulations explain a claimant is not disabled if he or she can perform his or her past relevant work as actually or generally performed. 20 C.F.R. §§ 404.1520(f), 1560(b)(2). At step four of the five-step sequential evaluation process outlined above, the Commissioner must determine whether the claimant has past relevant work to which he or she can return; if so, then a finding of not disabled is directed. However, if there is no past relevant work, or none which can be performed by the claimant, then the analysis proceeds to step five and the commensurate burden of proof then shifts to the Commissioner to show that other work that the claimant can perform exists in the national economy. 20 C.F.R. § 404.1520(b)-(f)).

The ALJ's decision clearly proceeded to step five of the analysis. Without question, the ALJ did not find Plaintiff "not disabled" at step four. The ALJ's statement that Plaintiff "may not have had any past relevant work," while somewhat equivocal, does not undermine the validity of the sequential analysis, because the ALJ apparently gave Plaintiff the benefit of the doubt—thereby resolving this ambiguity in Plaintiff's favor. In short, the record indicates that the ALJ presumed that, to the extent Plaintiff had any past relevant work, he was no longer able to perform it and so therefore proceeded to step five. Plaintiff's argument is meritless.

Furthermore, since a finding that Plaintiff was capable of performing past relevant prior work would have resulted in an adverse determination that Plaintiff was "not disabled," the Court finds this entire line of argumentation by Plaintiff peculiar. The only logical justification for raising this argument at all emerges toward the end of Plaintiff's brief, where he contends that a finding that he had no past relevant work logically restricts him to unskilled work since "[s]kills are not gained by doing unskilled jobs." (Pl.'s Brief at 5-6 (citing SSR 82-41).) However, as discussed in greater depth below, the Commissioner does not dispute Plaintiff's restriction to unskilled work.

**B. Whether the ALJ Erred Because His Fourth Hypothetical Failed to Specify Plaintiff's Education Level and Because He Failed to Evaluate Contrary Evidence Regarding Plaintiff's Education Level**

Plaintiff asserts that the ALJ's hypothetical question failed to refer to Plaintiff's education level, and that the VE's testimony in response therefore cannot serve as substantial evidence in support of the ALJ's disability determination.  (Pl.'s Brief at 12.)  Plaintiff further alleges that the ALJ erred in finding that Plaintiff had a limited education without considering contrary evidence, as he was required to do.  (*Id.* at 12-13 (citing 20 C.F.R. § 404.1564(b); *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990)).)

> **1. The ALJ's failure to refer to Plaintiff's education level in his hypothetical does not constitute reversible error.**

At step five, the burden shifts to the Commissioner to show that, despite the claimant's inability to perform his past relevant work, if any, sufficient jobs exist in the local and national economy which the claimant can perform.  20 C.F.R. § 404.1520.  In determining whether suitable jobs exist, an ALJ is allowed to depend upon the testimony of a VE; however, in order for the VE's testimony to constitute substantial evidence upon which the ALJ may rely, the VE must have considered the claimant's age, work experience, education, and residual functional capacity ("RFC").  The claimant's "RFC" is "the ALJ's assessment of what [the claimant] can and cannot do" given his [or her, or his or her] "limitations." *Varley*, 820 F2d at 779.  As the Sixth Circuit has recently explained,  "[t]he [VE's] testimony is directed solely to whether, given a claimant's age, experience, and education, **along with** the ALJ's assessment of what she 'can and cannot do,' there exist a significant number of employment opportunities for her in the regional and national economies."  *Cooper v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 450, 453 (6th Cir. 2007) (emphasis added).)

In his assessment, the ALJ performs an important filtering role for the VE by weighing the credibility of the medical evidence and then translating that evidence into a hypothetical which accurately "portrays" the claimant's limitations that result from his medical or psychiatric condition.  *Webb*, 368 F.3d at 633.  Conversely, the ALJ has no similar responsibility to filter or translate the information regarding the claimant's "age, education, and work experience" for the VE, as these factors are generally self-explanatory.  In fact, ALJs, in formulating their hypotheticals, frequently reduce these factors to a mere preamble to their assessment of a claimant's limitations (*i.e.*, "given a person with the claimant's same

age, education and work experience . . ."). Accordingly, it seems clear that a VE, in responding to the ALJ, must *consider* the claimant's age, experience, and education, but the Court is aware of no explicit requirement that the ALJ specifically articulate those factors in his hypothetical for the VE, who has sat through the entire hearing up until that point and heard the prior testimony. The VEs are apparently expected to have heard the testimony establishing the claimant's age, education and work experience, and to have considered that information, along with the ALJ's assessment of the claimant's limitations, in providing their vocational testimony.

In the present case, the ALJ failed to include the usual "given the claimant's age, experience, and education" preamble when he formulated his fourth hypothetical to the vocational expert, but Plaintiff's age (thirty-six) and education (seventh grade) were made clear during the hearing, in the VE's presence. (TR at 34-35.) Further, given that Plaintiff was classified as a "younger" person, specifically identifying his age would not have resulted in any particular limitations in the jobs he could perform. In addition, the VE, in response to the ALJ's hypothetical, only identified jobs that were suitable for a person of limited education. (TR at 54.) Consequently, it appears reasonable to assume that the VE was aware of Plaintiff's testimony and took his limited education into account in identifying jobs in response to the ALJ's hypothetical. To the extent the ALJ's failure expressly to restate those factors was error, it was harmless.

### 2. The ALJ properly considered Plaintiff's contrary evidence when finding that Wix had a limited education.

As mentioned above, the VE heard Plaintiff's testimony regarding his education, specifically, that he had completed the seventh grade. (TR at 34-35.) This level of education is considered a "limited education." (*See* 20 C.F.R. § 416.964(b)(3) ("We generally consider that a 7th grade through the 11th grade level of formal education a limited education.").) The grade level cannot be used as the sole determinate of a claimant's education level, however, when the plaintiff presents evidence which clearly contradicts it—that is, evidence which indicates the claimant's grade level "may not represent [his] actual educational abilities." (20 C.F.R. § 416.964(b).) This does not mean that *any* contrary evidence presented by a plaintiff automatically renders the presumptive grade level invalid. Rather, the question remains, considering *all the evidence in the record*, both supporting and refuting the presumptive grade level, whether substantial evidence supports the ALJ's finding that a particular educational level is appropriate. *Deaton v. Comm'r of Soc. Sec.*, 315 Fed. Appx. 595, 600-01 (6th Cir. 2009).

Plaintiff does not dispute that he completed the seventh grade, but he claims that he has a marginal education rather than a limited one based on the contrary evidence that he performed math at the fifth or sixth grade level. (TR at, 253, 475.) The ALJ, however, also considered supporting evidence that Plaintiff read at the high school or post-high school level, and spelled at the high-school level. (TR at 21.) Since substantial evidence supported the ALJ's determination that Wix has a limited education, this Court will not disturb that finding. Moreover, even if we assume that Wix has a marginal education, he would still be able to perform the jobs identified by the VE, all of which are characterized as "unskilled." *Cf. Deaton*, 315 Fed. Appx. at 600 (reaching the same conclusion in a situation where the plaintiff claimed she only read at the third-grade level despite having completed the eighth grade, and all the jobs identified by the VE were suitable for persons with marginal education as well as limited education).

C. **Whether the ALJ Erred in Framing His Fourth Hypothetical Question to the Vocational Expert**

Plaintiff asserts that the ALJ's fourth hypothetical question posed to the vocational expert (VE) during Plaintiff's hearing was fatally flawed because it did not precisely match the ALJ's residual functional capacity finding for Plaintiff. As a result, Plaintiff argues, the VE's response to that flawed hypothetical cannot constitute substantial evidence in support of the ultimate finding that Plaintiff is not disabled. (Pl.'s Brief at 7-11 (citing, inter alia, *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)).) More specifically, Plaintiff argues that the ALJ neglected to incorporate into the hypothetical an inability to have contact with the public, restriction to routine work, and restriction to unskilled work, all of which were enumerated in Plaintiff's RFC (TR 20)[1].

The Sixth Circuit has never expressly held that a hypothetical must include *all* of the plaintiff's limitations, so long as substantial evidence supports the findings of the ALJ. *Varley*, 820 F2d at 779-80 (upholding the ALJ's reliance on VE testimony that was predicated on a hypothetical that omitted reference to the claimant's need to avoid noise and inability to cope with interpersonal contact, or his dizziness or hearing loss, but required the VE to assume plaintiff had to avoid exposure to extended loud noise and close contact with coworkers and supervisors). While it is true that the ALJ's hypothetical

---

[1] As the Commissioner has conceded that the ALJ relied only upon the fourth hypothetical posed to the VE, it is unnecessary for this Court to review the other four of the five hypotheticals.

question must accurately "portray" the plaintiff's individual physical and mental impairments, *id.* at 779, "portray" does not mean that every impairment of the claimant must be specifically enumerated, so long as the ALJ incorporates the appropriate limitations based on those impairments into the hypothetical.[2] *Webb*, 368 F.3d at 633 (reversing district court's decision requiring that the ALJ's hypothetical list the plaintiff's arthritis, when only a plaintiffs *limitations*, not medical *conditions*, are required to be listed in the hypothetical). Thus, the relevant question is whether the ALJ, in articulating his hypothetical to the VE, included all of the relevant limitations ascribed to Plaintiff in the RFC.

Plaintiff insists that the ALJ failed to articulate his inability to interact with the public and restriction to unskilled, repetitive work in his hypothetical, and that this failure constitutes reversible error. (Pl.'s Brief at 10.) It appears, however, that the omission, if any, was of similar quality to that in *Varley*. Here, the ALJ asked the VE to assume, inter alia, that the claimant in his hypothetical needed limited contact with the public and "jobs which are generally repetitious." (TR 53.) He also indicated the claimant had limitations in the areas of concentration, persistence, pace, and decision-making abilities, which are fully consistent with the Commission's description of unskilled work.[3] (TR 53.) The Court finds that the hypothetical framed by the ALJ adequately incorporated, and accurately portrayed, all the limitations set forth in the Plaintiff's RFC. To the extent the ALJ erred in failing to ensure that the language of his hypothetical mirrored that of the Plaintiff's RFC, such error was harmless, and Plaintiff's argument is without merit.

---

[2] There appears to be an internal Sixth Circuit divide since the 1987 *Varley* decision, with some three judge panels embracing the view that the ALJ's hypothetical must contain all of the plaintiff's impairments, and other panels rejecting that viewpoint and holding instead that the ALJ's hypothetical must only contain the plaintiff's *limitations* rather than his *impairments*. This Court is persuaded by the interpretation of *Varley* set forth in *Webb*, and therefore finds that only the claimant's limitations must be included in the hypothetical, so long as such limitations accurately portray the claimant's impairments. *Compare Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (holding that the hypothetical must enumerate all of a plaintiff's impairments); *White v. Comm'r of Soc. Sec.*, 312 Fed. Appx. 779 (6th Cir. 2009) (same); *with Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (holding that the term "portray" does not mean that every impairment of the claimant must be enumerated, and that any language to the contrary in *Howard* was dicta); *Infantado v. Astrue*, 263 Fed. Appx. 469, 476 (6th Cir. 2008) (same*)*

[3] Plaintiff argues that the ALJ found Wix capable of "perform[ing] 'lower level semi-skilled' **work**," (Pl.'s Brief, at 11 (citing TR at 53) (emphasis added)), but, actually, the hypothetical is silent as to what 'semi-skilled' modified. And, as the Commissioner points out, given the additional limitations in the Plaintiffs RFC, this language is better read as " 'lower level semi-skilled' **functions**" since it is clear that, with the additional limitations provided in the hypothetical, Wix would be limited to unskilled *work* despite his ability to perform some lower level semi-skilled *functions.* (Df.'s Brief, at 14.) (emphasis added)

**D. Whether the ALJ Erred By Failing to Inquire Whether the VE's Testimony's Was Consistent with the Dictionary of Occupational Titles**

The DOT, or Dictionary of Occupational Titles, is an authoritative vocational reference source which is the primary, but not a binding resource, for job descriptions used by the Commissioner to identify available jobs. Social Security Ruling 00-4p provides that an ALJ is *always* required to ask a VE whether his or her testimony is consistent with the DOT:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any *possible conflict* between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
>> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>>
>> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, at *4 (emphasis added).

Based on this Social Security Ruling, Wix argues that remand is required in this case because the ALJ failed to ask the VE whether she was testifying consistently with the DOT. (Pl.'s Brief at 14-15 (citing, inter alia *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).) Wix does not, however, allege that any conflict between the VE's testimony and the DOT existed. He merely asserts that, as a matter of law, because the ALJ failed to make a formulaic inquiry into any potential conflict, the case must be remanded.

The Circuits are split on whether remand is required for a failure to inquire about potential conflicts even when there is no indication that any conflict existed. The Sixth Circuit, while recognizing the split in authority, has not resolved this issue. *See Lancaster v. Comm'r of Soc. Sec.*, 228 Fed. Appx. 563, 574 (6th Cir. 2007) (identifying the uncertainty, but declining to adopt a position on the issue). There are, however, a number of cases from other circuits, and from district courts within this circuit,[4] in which

---

[4] *See, e.g.*, *Boone v. Barnhart*, 353 F.3d 203, 206 (3d Cir. 2003) (declining to "adopt a general rule that an unexplained conflict . . . .requires reversal"); *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) (same)**;** *McEwen v. Astrue*, No. 3:06-0319, 2009 U.S. Dist. LEXIS 118623 (M.D. Tenn. Dec. 21, 2009) (holding that the ALJ's failure to inquire about inconsistencies does not constitute reversible error where there is no allegation that there is an inconsistency); *Miracle v. Astrue*, No. 3:06-0918, 2009 U.S. Dist. LEXIS 119872 (M.D. Tenn. Dec. 4, 2009) (same); *Brown v. Barnhart*, 408 F. Supp. 2d 28, 35 (D.D.C. 2006) ("Even if SSR 00-4p places an affirmative duty on the judge, such a procedural requirement would not necessarily bestow upon a plaintiff the right of automatic remand where that duty was unmet.").

the courts have concluded that an ALJ's failure to inquire about consistency with the DOT is not reversible error unless a potential conflict actually exists, thereby undermining the reliability of the VE's testimony and the ALJ's ability to rely upon it.  This Court likewise holds that where, as here, the ALJ technically erred in failing to inquire about conflicts under SSR 00-4p, but there is no allegation that any conflict actually existed, such an oversight does not amount to reversible error.

### E.  Whether the ALJ Erred Because His Finding of "Low Stress" Is Too Vague for Review

Social Security Ruling 85-15 states, in part: "[b]ecause response to the demands of work is highly individualized, . . . [a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment."  SSR 85-15, at * 6.  Citing to that Ruling, Plaintiff contends that, because the ALJ did not "specify which kind(s) of tasks or work setting(s) [Plaintiff] found stressful," his incorporating into Plaintiff's mental residual functional capacity "a restriction to low-stress work has no obvious meaning," and, therefore, that the mental residual functional capacity the ALJ ascribed to Plaintiff is "unreviewable."  (Pl.'s Brief at 16.)

Here, the ALJ did not just limit Plaintiff to a "low level of stress," but went on to clarify the impact that this restriction would have on Wix's ability to work; specifically, he articulated how this low-stress limitation meant that Plaintiff needed to have limited contact with supervisors and the public.  (TR at 20.) This finding was sufficient to satisfy the requirements of the SSR 85-15. The Court therefore holds that the ALJ did not commit reversible error by limiting Plaintiff to work with a low level of stress.

## V.    CONCLUSION

For the reasons discussed above, the Court finds that the ALJ did not commit any reversible legal errors in reaching his conclusion, and that his decision is supported by substantial evidence in the record. An appropriate order denying Plaintiff's motion for judgment will be entered.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge